On the MERITS.
• The facts are that on the 7th of May, 1895, the defendant entered into a contract with the Monroe Brick Company to build a club and opera house upon a lot which the defendant company had bought from the plaintiff on credit.
The purchase price was unpaid. Eight thousand dollars was the price stipulated for the building.
*1459 The club employed R. J. Searcy to furnish and set up a boiler and to put in water pipes, tanks, tubs and other ■ improvements needful to furnish steam to heat the club room and opera house.
His claim was recorded in the mortgage record.
In an act of mortgage dated the 8th day of November, 1895, the Monroe Athletic Olub, defendant here, acknowledged an indebtedness of six thousand two hundred dollars to the Monroe Brick Company, and an indebtedness of one thousand nine hundred and eighty-nine dollars and twenty cents to E. Fudiekar, for which amount the club gave a mortgage and notes secured by the mortgage. Of the total indebtedness, five thousand dollars was to be secured by a mortgage first in rank, and the remainder by a mortgage second in rank.
A stipulation of the mortgage shows that the brick company, in accepting the mortgage, did not relinquish and novate the builder’s lien it had; it was especially reserved.
The brick company transferred its notes secured by mortgage and all claims it had against the defendant to the Ouachita National Bank.
In the act of transfer the contract and builder’s lien is referred to as transferred; besides the transferrer bound itself hot to attempt to prorate its mortgage note with its transferee, the Ouachita National Bank. The bank in turn transferred this claim to Fudiekar.
The transferee, Fudiekar, foreclosed his mortgage, and at the sale became the adjudicatee of the property for the sum of seven thousand and fifteen dollars.
The judgment of the District Court decreed payment to R. J. Searcy of the sum of one thousand and eighty-one dollars out of the sale, and the remainder to the plaintiff.
The judgment recognized the claim of the brick company for the sum of one thousand two hundred dollars, with interest and fee of attorney as due by the defendant, but rejected the privilege it claimed upon the property.
From the judgment the brick company alone prosecutes this appeal.
The appellant transferred to the Ouachita National Bank its contractor’s lien and mortgage upon the property to secure the payment of the claim transferred, and, in addition, in writing, bound itself not to ask a concurrent distribution, with its transferee, of the proceeds of the sale of the property mortgaged.
*1460 The plaintiff was not a third person. It appears by the act of mortgage in favor of the brick company that he held the mortgage •second in rank.
He, in acquiring the mortgage first in rank, became subrogated to the rights of his transferrer under the mortgage. Subrogation took place of right. O. C. 2160. As we appreciate the testimony that was the agreement when he acquired the claim; besides as second mortgage creditor, the law in its effect in such cases subrogated him to all the rights of the one from whom he acquired. We feel justified in considering the claim as if it were still held by the Ouachita National Bank, the original transferrer to the plaintiff.
In that case it would not be possible to claim for the brick company •a preference over the bank, to whom it transferred its notes secured by mortgage on the property. The mortgage rights under this first mortgage prime every claim of the brick company. It can not be otherwise in view of the written agreement entered into by it binding itself not to contend for or claim a participation in the proceeds •of the sale of the property.
The brick company, to the amount of five thousand dollars, is concluded by its written agreement both in so far as the plaintiff is con-cerned or the Ouachita National Bank.
This conclusion disposes of the issues between the plaintiff and the brick company.
This brings us to a consideration of the claim of the opponent, ■Searcy, who alleged that his contract and account for work done by him on the building were seasonably registered; that this amount due him is secured by a lien, which takes rank of all mortgages on the property.
We have seen that the brick company is estopped from claiming preference on the proceeds over the bank and its transferee, the plaintiff.
The third opponent, Searcy, as a privilege creditor, retained his preference as to payment over the mortgage of plaintiff.
It follows that the waiver in favor of the bank, which enured to the ■benefit of the plaintiff, resulted in securing a prior right in favor of this third opponent.
It was urged on the part of the brick company that plaintiff in his petition to foreclose his mortgage did not claim a privilege on the property, but that he limited his claim to his mortgage.
*1461 As concerned the brick company, there was no necessity of his claiming a privilege; the mortgage by agreement gave him the first rank as a creditor, the effect of which was to subordinate the brick company’s claim to plaintiff’s mortgage covering amount of the mortgage interest and fee of attorney, and to the claim of those who had a right superior in rank to this mortgage.
It is urged against the privilege securing this claim that it should be limited to the property placed on the building by this contractor.
The testimony shows that this debt was for work and material used in the building, and that it, the material, can not be detached and taken therefrom without damaging the building.
The privilege arises under Art. 3249 of the Civil Code.
This creditor had a separate appraisement made of this property in accordance with the allegation of his petition, made in the alternative if he was not granted a privilege under the article just cited, then he prayed for a vendor’s privilege on this property.
The opposing creditors claim that this was in effect a waiver.
We do conceive that this was a relinquishment of any right, claimed, as it was, in the alternative.
We have given this case on all points careful consideration, and have found no reason to disturb the judgment;
It is therefore ordered and adjudged that the judgment appealed from is affirmed.
Nicholls, C. J., absent; ill.